Bartlet, C. J.
I can not concur in the opinion of the majority of the court in this case, and deem it proper to state briefly the grounds of my dissent.
The present supreme court is a different and an entirely distin ct tribunalfrom the late supreme court in bank, under the old constitution, differing from it not in its organization merely, but also in its jurisdiction, both original and appellate. The 2d section of the 4th article of the constitution confers upon the present supreme-court, “ original jurisdiction in quo warranto, mandamus, habeas corpus, and procedendo, and such appellate jurisdiction' as may be pro- ‘ vided by law.” The district court is also a new and distinct organization, differing from the late supreme court on the circuit, not merely in the mode in which it is constituted, but likewise in its-jurisdiction. The 6th section of the 4th article of the constitution provides, that “ the district court shall have like original jurisdiction! with the supreme court, and such appellate jurisdiction as may be provided by law.”
The writ of error falls within the appellate jurisdiction, and therefore had to be conferred by a law to be enacted after the constitution took effect.
*It can not be maintained that the 12th section of the schedule in the constitution confers this jurisdiction by providing: that,11 the district courts shall, in their respective counties, be the successors of the present supreme court, and all suits, etc., pending-in said supreme court in the several counties, shall be transferred to the respective district courts of such counties,” etc. The provisions of the schedule were, in their very nature, intended for mere temporary or limited purposes; and by a fair interpretation of this particular provision, the district court became the successor *289 of the supreme court on the circuit, only with reference to the causes pending, judgments, records, etc. A different construction would lead to absurdity and contradiction. The whole context of an instrument must be looked to, in giving it an interpretation. If, by this provision in the schedule, the district courts succeeded to all the jurisdiction of the late supreme court on the circuit, it would be in conflict with the provision in the body of the constitution above mentioned, which fixed the original jurisdiction, confining it to four writs, and provided prospectively that the appellate jurisdiction should-be prescribed by law.
It is true that the laws relating to the jurisdiction of the courts, and regulating the process and remedies in the courts under the old constitution, which were in force when the new constitution took effect, and not contrary to its provisions, continued in full force so long as those courts continued to exist. Eut when those courts ceased to exist, the laws, which were in their terms made applicable to them, lost their legal vitality for want of the judicial organization for which they were enacted and to which they were adapted.
The general assembly, in the enactment of February 19,1852, relating to the organization of courts of justice and their powers and duties, sections 4 and 13, conferred the jurisdiction upon the-new courts to issue writs of error, but expressly provided that they should be issued “ on good cause shown.” And these provisions are not confined to writs of error in any particular class of cases, but in terms apply to *the issue of writs of error in all cases. So that the law contemplated by the new constitution, relating to the new courts, instead of authorizing writs of error as of course, expressly provided an allowance “ on good cause shown.” And by no correct principle of construction can it be maintained that this general authority for the issue of writs of error on an allowance is qualified and enlarged by the 18th section of the law, which provided that “All process and remedies authorized by the laws of this state, etc., when the present constitution took effect, may be had and resorted to, in the courts of the proper jurisdiction under the present constitution,” etc. A statute is to be construed with reference to the whole context of it, and the intention of the law-making power. If, under the provision in this 18th section, writs of error could have been issued, the authority would be qualified by the condition of an allowance “on good cause shown” prescribed in the preceding part of the same act. A different construction would lead to a repugnancy., *290 at war with the evident intention of the legislature. A provision, in one part of the statute, conferring- general authority to issue all writs of error, whether returnable to the supreme court, or to the district court, upon an allowance on good cause shown, would be in plain conflict with a provision in another part of the same statute authorizing all writs of error from districts courts, upon judgments at law in the courts of common pleas, to issue as a matter of course, whether there existed good cause or not.
The general assembly, however, in the amendatory act of 30th April, 1852, repealed this 18th section, and at the same time re-enacted the same provision, with some-little change in other respects, adding a clause “ excepting all process, remedies and laws inconsistent with the laws passed since the present constitution took effect.” This exception, as it seems to me, removed all ground, for controversy, and- clearly left the general provision in the act of 19th February, authorizing writs of errors only on an allowance on good cause unqualified in every respect.
*The following, from Smith’s Commentaries on statutory construction, sec. 490, is in point:
“ In the interpretation and construction of a law, every part and the whole law is to be considered, and the sense gathered from the whole and each expression, and not so much the signification, which a particular word individually would admit of, as that which it ought to have from the context, spirit and purview of the law. It was a maxim of the Roman law: 1 Incivile est, nisi tota lege perspecta una aliqua partícula ejus proposita judiciari vel responderé.’ It is only in this way an interpretation can be made in such a manner as that all parts shall be made consonant with each other, so that what follows may agree with what precedes. This should always be done by interpretation, unless it evidently appears, that, by subsequent clauses, the framers intended to make some alteration in preceding •ones. So, too, two different statutes, enacted at different times, may have such a relation to each other, and stand so intimately connected .aS that the one may serve as a key to the true interpretation of the other; and upon this principle rests the doctrine of examining all the statutes in pari materia.’’
And the author adds: “ The reason of the statute—that is, the motives which led to the making of it, the object in contemplation, at the time the act was passed, is another criterion by which to .¡ascertain the true meaning of the act.”
*291 The power to issue writs of error, conferred by the act for the organization of the courts under the former constitution, authorized it only upon an allowance on “ good cause shown.” And this regulation continued until the statute of March 12, 1845, prohibiting appeals to the supreme court. In this enactment the legislature substituted the writ of error as a matter of course for appeals which were prohibited. And in the statute of 19th February, 1852, above mentioned, the legislature provided for the restoration of the right of appeal from the judgment of the court of common pleas, and, at the same time expressly authorized writs of error generally, but only upon “ good cause shown.” The object and intention of the law-making power appear to me to be too apparent to admit of controversy.
There is yet another difficulty in finding authority for issuing writs of error as a matter of course, under the authority of the sweeping provision that “ all process and remedies authorized by the laws of this state, and the laws regulating the practice of courts, etc., when the present constitution took effect, shall be applicable to the courts under the present constitution.” This provision of the statute, if it has any *validity, both revives and amends sundry laws, and parts of laws, covering several hundred pages on the statute books, and relating to a variety of different subjects connected with the powers, duties, and practice of the several courts. The 16th section of the 2d article of the constitution contains a restriction upon the power of the general assembly, in the enactment of laws, to wit:
“No bill shall contain more than one subject, which shall be clearly expressed in its title; and no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended; and the section or sections so amended shall be repealed.”
When the courts, under the former constitution, ceased to exist, the laws regulating their powers and duties, and made specially applicable to them, lost their validity and became a dead letter upon the statute book. The object upon which they operated having become extinct, they became wholly inoperative. If new life was given to these laws by making them applicable to another and different judicial organization, they were revived without the new act containing the entire act or acts revived.
An amendatory law is one which makes additional provisions to, *292 or some change in the original act. If these statutes were so changed as to acquire a new operation which did not before belong to them, they were amended without a compliance with the’constitution.
One of the chief objects of the new constitution was to impose some restraint upon hasty and inconsiderate legislation and the abuse of legislative power. So frequent and so inconsiderate have been the changes made in the laws of the state, that it has become a serious question whether the evils of legislation do not preponderate over its blessings. The framers of the new constitution have endeavored to impose some salutary checks upon this abuse of power. If these constitutional restraints are to be disregarded or frittered away by construction, the legislative branch of the government may lose the confidence of its most zealous advocates, as a safe depository of civil power.
*It is said that a compliance with this provision of the. constitution would, in this instance, have occasioned great and unnecessary inconvenience. I have yet to learn that the argumentum ab inconvenienti ought to prevail against the strict observance of the constitutional regulations or restraints upon legislative power.